UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KARAMELION LLC,<br>        Plaintiff, | Case No. 1:20-CV-639 |
| v. | Hon. Sharon Johnson Coleman |
| INTERMATIC INCORPORATED,<br>        Defendant. | **JURY TRIAL DEMANDED** |

### DEFENDANT INTERMATIC INCORPORATED'S ANSWER AND COUNTERCLAIMS TO PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendant Intermatic Incorporated ("Intermatic") files this Answer to Plaintiff Karamelion LLC's ("Karamelion") First Amended Complaint for Patent Infringement ("Complaint"). Intermatic denies the allegations and characterizations in Plaintiff's Complaint unless expressly admitted in the following paragraphs.[1]

### I.   THE PARTIES

1.      Plaintiff Karamelion LLC ("Karamelion" or "Plaintiff") is a Texas limited liability company with its principal place of business at 5570 FM 423, Suite 250 #2022, Frisco, TX 75034.

**ANSWER**: Intermatic is without knowledge or information sufficient to form a belief as to the truth the allegations in Paragraph 1 of the Complaint. Except as expressly admitted, Intermatic denies the allegations in Paragraph 1 of the Complaint.

2.      On information and belief, Defendant Intermatic Incorporated, ("Defendant") is a corporation organized and existing under the laws of Delaware, with a place of business at 7777

---

[1] For avoidance of doubt, Intermatic denies liability for all allegations of patent infringement included or implied in the introductory paragraph or in any headings or footnotes of the Complaint.

1

Winn Road, Spring Grove, IL 60081. Defendant has a registered agent at Registered Agent Solutions, 901 S 2nd St., Ste 201, Springfield, IL 62704.

> **ANSWER**: Intermatic admits that it is a corporation organized and existing under the laws of Delaware, with a place of business at 7777 Winn Road, Spring Grove, IL 60081. Intermatic denies the remaining allegations in Paragraph 2 of the Complaint.

## II. JURISDICTION AND VENUE

3.     This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction of such action under 28 U.S.C. §§ 1331 and 1338(a).

> **ANSWER**: Intermatic admits that the Complaint purports to set forth an action for infringement under the Patent Laws of the United States, Title 35 of the United States Code, and that the Court has subject matter jurisdiction under 38 U.S.C. §§ 1331 and 1338(a), but Intermatic denies that Plaintiff's claims have any merit and denies Plaintiff is entitled to any relief from Intermatic.

4.     On information and belief, Defendant is subject to this Court's specific and general personal jurisdiction, pursuant to due process and the Illinois Long-Arm Statute, due at least to its business in this forum, including at least a portion of the infringements alleged herein. Furthermore, Defendant is subject to this Court's specific and general personal jurisdiction because Defendant has a place of business within this District.

> **ANSWER:** Intermatic does not contest whether personal jurisdiction over it properly lies in this District in this case, that it has a place of business within this District, or that it conducts business in this forum. Intermatic denies the remaining allegations of Paragraph 4 of the Complaint.

2

5.      Without limitation, on information and belief, within this state, Defendant has used the patented inventions thereby committing, and continuing to commit, acts of patent infringement alleged herein. In addition, on information and belief, Defendant has derived revenues from its infringing acts occurring within Illinois. Further, on information and belief, Defendant is subject to the Court's general jurisdiction, including from regularly doing or soliciting business, engaging in other persistent courses of conduct, and deriving substantial revenue from goods and services provided to persons or entities in Illinois. Further, on information and belief, Defendant is subject to the Court's personal jurisdiction at least due to its sale of products and/or services within Illinois. Defendant has committed such purposeful acts and/or transactions in Illinois such that it reasonably should know and expect that it could be haled into this Court as a consequence of such activity.

**ANSWER**: Intermatic incorporates its admissions, averments, and denials in Paragraph 4 above as if set forth fully herein. Intermatic admits that it conducts business in the State of Illinois. Intermatic denies it has committed acts of infringement within this District or any other district. Intermatic denies the remaining allegations of Paragraph 5 of the Complaint.

6.      Venue is proper in this district under 28 U.S.C. § 1400(b). On information and belief, Defendant has a place of business within this District. On information and belief, from and within this District Defendant has committed at least a portion of the infringements at issue in this case.

**ANSWER**: Intermatic does not contest that venue is proper in the Northern District of Illinois in this case and that it has a place of business in this District. Intermatic denies the remaining allegations in Paragraph 6 of the Complaint.

3

7.      For these reasons, personal jurisdiction exists and venue is proper in this Court

under 28 U.S.C. § 1400(b).

**ANSWER**: Intermatic incorporates its admissions, averments, and denials in Paragraphs 4-

6 above as if set forth fully herein. Intermatic denies any remaining allegations of

Paragraph 7 of the Complaint.

### III. COUNT I
### [ALLEGED] PATENT INFRINGEMENT OF U.S. PATENT NO. 6,275,166

8.      Plaintiff incorporates the above paragraphs herein by reference.

**ANSWER**: Intermatic incorporates by reference its responses in paragraphs 1-7 above as

if fully set forth herein.

9.      On August 14, 2001, United States Patent No. 6,275,166 ("the '166 Patent") was

duly and legally issued by the United States Patent and Trademark Office. The application leading

to the '166 patent was filed on January 19, 1999. (Ex. A at cover). The '166 Patent is titled "RF

Remote Appliance Control/Monitoring System." A true and correct copy of the '166 Patent is

attached hereto as Exhibit A and incorporated herein by reference.

**ANSWER**: Intermatic admits that the purported copy of U.S. Patent No. 6,275,166 (the

"'166 Patent") that is attached to the Complaint as Exhibit A indicates that the application

leading to the '166 Patent was filed on January 19, 1999, that the '166 Patent issued on

August 14, 2001, and that the '166 Patent is entitled "RF Remote Appliance

Control/Monitoring System." Intermatic is without knowledge or information sufficient to

form a belief as to the truth of the remaining allegations in Paragraph 9 of the Complaint.

Except as expressly admitted, Intermatic denies the allegations in Paragraph 9 of the

Complaint.

10.    Plaintiff is the assignee of all right, title and interest in the '166 patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '166 Patent. Accordingly, Plaintiff possesses the exclusive right and standing to prosecute the present action for infringement of the '166 Patent by Defendant.

**ANSWER**: Intermatic denies it has committed acts of infringement within this District or any other district. Intermatic is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 10 of the Complaint. Except as expressly admitted, Intermatic denies the allegations in Paragraph 10 of the Complaint.

11.    The invention in the '166 Patent relates to control and monitoring of distributed systems in buildings such as systems for controlling and monitoring heating, air conditioning, lighting, security, occupancy, and usage of distributed facilities. (Ex. A at col. 1:5-12). Control of such distributed systems in the prior art commonly used computer networks and business software. (*Id*. at col. 1:11-13). A major difficult with such systems was the expense of wiring inter-connections between elements of the system, particularly when there are additions or changes to be made in the system. (*Id*. at col. 1:14-18). Prior art attempts to reduce the expense of the systems included using efficient network products such as using a widely known Ethernet standard, using AC power wiring to transmit RF communications to remove controllers, and using a combination of wired and wireless communications. (*Id*. at col. 1:18-27).

**ANSWER**: Intermatic admits that the '166 Patent speaks for itself, but denies any characterizations inconsistent therewith. Intermatic denies that the claims of the '166 Patent constitute any "invention." Intermatic denies any remaining allegations in Paragraph 11 of the Complaint.

12.     However, these centralized wireless control systems for building appliances have not been widely used mainly because systems that have a sufficient communication ranges are normally subject to regulations and licensing requirements that are prohibitively expensive. (*Id*. at col. 1:28-32). Also, systems that are powerful enough to be used in widely distributed installations are unnecessarily expensive to be used in smaller installations. (*Id*. at col. 1:32-34). With respect to wireless communication, there is limited availability of RF carrier frequencies, and potential interference with other nearby systems that might be operating in similar frequencies. (*Id*. at col. 1:34-37). Because of the continued deficiencies of the prior art solutions, there was a need for a wireless appliance control system that overcomes the disadvantages of the prior art solutions. (*Id*. at col. 1:38-39).

> **ANSWER**: Intermatic admits that the '166 Patent speaks for itself, but denies any characterizations inconsistent therewith. Intermatic denies any remaining allegations in Paragraph 12 of the Complaint.

13.     The inventors developed an invention that "meets this need by providing a wireless configuration that uses a distributed array of low power (short range) wireless controllers that are also functional as relay units for communicating with a headend control computer at long range." (*Id*. at col. 1:42-46).

> **ANSWER**: Intermatic admits that the '166 Patent speaks for itself, but denies any characterizations inconsistent therewith. Intermatic denies that the claims of the '166 Patent constitute any "invention." Intermatic denies any remaining allegations in Paragraph 13 of the Complaint.

14.     The '166 patent discloses exemplary embodiments of the claimed invention. The claimed invention is typically implemented in a building or location that has an appliance

control/monitoring system. (*Id*. at col. 3:64 – col. 4:7). For example, the following figure is of a building (11) having a distributed array of appliance management stations (12) that wirelessly communicate with a headend control station (14) (*Id*. at col. 3:66 – col. 4:4):



The typical appliances connected to the appliance control/monitoring system are heating, ventilation and air conditioning units (HVAC), temperature sensors, motion detectors, and audio/video devices. (*Id*. at col. 1:5-9, col. 4:54-61). The appliances are interfaced with relay units that have appliance interface/controllers to communicate with the appliance and satellite radio transceivers. (*Id*. at col. 4:62-66). The satellite radio transceivers of the relay units are operable at low power and have a limited wireless communications range that reaches only a portion of the building or location. (*Id*. at col. 4:62-66). In order to for the relay units to communicate beyond their limited wireless range, they communicate by relaying transmissions using intermediate relay units to the intended destination. (*Id*. at col. 4:66 – col. 5:1). An exemplary simplified circuit block diagram of the appliance controller portion of the relay unit, including a satellite radio transceiver, is shown in Figure 3 of the '166 patent:

7



(Ex. A). The microprocessor (34) is connected between a satellite transceiver (22) and the appliance device (24). (*Id.* at col. 5:13-15).

> **ANSWER**: Intermatic admits that the '166 Patent speaks for itself, but denies any characterizations inconsistent therewith. Intermatic denies that the claims of the '166 Patent constitute any "invention." Intermatic denies any remaining allegations in Paragraph 14 of the Complaint.

15.    The '188 patent includes a diagram of an exemplary command protocol (Fig. 4) and exemplary return protocol (Fig. 5):



(Ex. A). The exemplary command protocol includes an address section (62) that includes a destination address (63) and may include relay addresses (64) so that the message may be relayed to another device. (*Id*. at col. 7:40-43). Following the address section is a command section (66) that includes device commands (67) that are directed to particular appliance devices at the

8

destination relay unit. (*Id.* at col. 7:43-47). The exemplary return protocol includes a counterpart of the address section (72) that includes a destination address (73) and relay addresses (74). (*Id.* at col. 7:48-51). Following the address section of the return protocol is a feedback section (76) that include feedback elements (77) that are responsive to the appliance devices at the destination relay unit. (*Id.* at col. 7:51-55).

> **ANSWER**: Intermatic admits that the '166 Patent speaks for itself, but denies any characterizations inconsistent therewith. Intermatic denies any remaining allegations in Paragraph 15 of the Complaint.

16.     A pictorial diagram showing an exemplary process for using a portion of the system is shown in Figure 6 of the '166 patent:



(Ex. A). A transmitter in the headend computer (H) signals the addresses of relay units (20), with one of the addresses being the destination address (D), and the other addresses include a first and second relay address (R1, R2), and a control signal (C) for appliance (A) being interfaced to the destination relay unit (D). (*Id.* at col. 7:56-65). The first relay unit decodes the first relay address, and transmits the control signal, the second relay address and the destination address from the first relay unit; the same steps occur at the second relay unit but with respect to decoding the second relay address. (*Id.* at col. 7:65 – col. 8:1). The destination relay unit decodes the destination address and feeds the control signal to the appliance; then the destination unit transmits the destination

address, the first and second relay addresses, and an acknowledgement signal (Ak). (*Id*. at col. 8:2-6). The second relay unit decodes the second relay address, and then transmits the acknowledgement signal (Ak), the first relay address, and the destination address; the same steps occur at the first relay unit but with respect to decoding the first relay address. (*Id*. at col. 8:6-9). The headend computer decodes the destination address and receives the acknowledgement signal (Ak). (*Id*. at col. 8:9-11). The decoding and transmitting in the relay units are implemented by first and second instruction portions (82A, 82B), respectively, of the relay program (82). (*Id*. at col. 8:11-14). The feeding of the control signal by the relay unit to the appliance and generating the acknowledgement signal occurs in the appliance program (84). (*Id*. at col. 8:14-16). Both the relay program and appliance program are in the microcomputer memory of each relay unit. (*Id*. at col. 8:16-18).

> **ANSWER**: Intermatic admits that the '166 Patent speaks for itself, but denies any characterizations inconsistent therewith. Intermatic denies any remaining allegations in Paragraph 16 of the Complaint.

17.     As explained during the prosecution history, the prior art did not teach a relay unit being an appliance controller that communicated with a headend computer using at least two other relay units. The invention therefore overcame the prior art, which were excessively expensive, had insufficient bandwidth, were ineffective in serving multiple devices, were unreliable, and were difficult to use. (Ex. B at col. 1:43-51).

> **ANSWER**: Intermatic denies that the claims of the '166 Patent constitute any "invention" and that it "overcame the prior art." Intermatic is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 17 of

the Complaint. Except as expressly admitted, Intermatic denies the allegations in Paragraph 17 of the Complaint.

**[Alleged] Direct Infringement**

18.     Upon information and belief, Defendant has been directly infringed claim 16 of the '166 patent in Illinois, and elsewhere in the United States, by performing actions comprising using an appliance controller for a distributed appliance system having a headend computer to satisfy the method steps of claim 16, including without limitation the InterMatic MultiWave System Controller and Z-Wave Dimmers, temperature sensor receivers and other Z-wave supported devices ("Accused Instrumentality").

**ANSWER**: Intermatic denies the allegations in Paragraph 18 of the Complaint.

19.     On information and belief, Defendant performed the step of providing a headend computer having a main radio transceiver. For example, Defendant provides the MultiWave System Controller, which has a radio transceiver.



(https://www.intermatic.com/-/media/inriver/7092-8536.ashx).[1]

11



(https://www.intermatic.com/en/pool-and-spa/electronic-controls/pe653).

## Testing Z-Wave® Reception

The MultiWave Control System is compatible with Z-Wave–enabled networks. The controller communicates with the receiver by transmitting an RF signal. You need to make sure that the receiver is receiving the signal from the controller in every area of the pool/spa system.

1. While standing in a position near the receiver, press a button on the controller to activate the screen.

2. Press **1** on the controller and check the receiver to verify that circuit 1 changes states.

3. Move further from the receiver and repeat the test in step 2.

**NOTE:** If at any point **OUT OF RANGE** appears on the controller, follow the instructions under "Remoting the Antenna" to improve reception.

4. Move around the receiver, working into all areas of the pool/spa system and repeating the test.

(https://www.intermatic.com/~/media/inriver/7092-8536.ashx).

The MultiWave system controller and PE953 receiver are compatible with Z-Wave enabled networks. Each Z-Wave enabled device is designed to act as a repeater, re-transmitting the RF signal around obstacles and radio dead spots as possible to ensure messages are received by the intended destination device. Follow the steps in this chapter to add Z-Wave devices to your network.

- Including Z-Wave Devices into the Network
- Adding Z-Wave Devices to Scenes
- Configuring Scene Names in Controller
- Controlling Z-Wave Devices
- Removing Z-Wave Devices from Scenes
- Removing Z-Wave Devices from a Network

(*Id*.).



PE953 | Wireless Remote, MultiWave systems

🖶 PRINT   ✉ EMAIL   ⊰ SHARE

**PE953**
WIRELESS REMOTE, MULTIWAVE SYSTEMS

Documents & Downloads

📄 Multiwave Brochure
📄 PE953 Instructions

**SOFTWARE DOWNLOADS**

(https://www.intermatic.com/en/pool-and-spa/accessories/pe953).

## Features & Applications

### Features

- On-demand control of MultiWave functions and other Z-Wave devices

- Backlit display shows time of day, equipment status, water and air temperatures and ON/OFF schedules

- Water-resistant

- Includes 3 AA batteries and equipment labels

- 2-year warranty

(https://www.intermatic.com/en/pool-and-spa/accessories/pe953).



**Intermatic HomeSettings HA20C 3-Way In-Wall Switch Dimmer**

SKU: HA20C
Price: $58.46

(https://web.archive.org/web/20150704023643/http://www.smarthome-products.com/p-460-intermatic-homesettings-ha20c-3-way-in-wall-switch-dimmer.aspx).

| Description | Summary |

Because the HA20 In-Wall Dimmer is a Z-Wave™ device, it is compatible with any HomeSettings network, other Z-Wave networks, and all HomeSettings or other Z-Wave devices displaying the Z-Wave logo, regardless of manufacturer. Each module in a Z-Wave network communicates with every other module, routing your commands to their destination by the most reliable pathway. When Z-Wave devices are installed throughout the house, signals are automatically routed around obstacles or dead spots, for dependable performance.

*The outstanding features of the HomeSettings HA20 600W In-Wall Dimmer include:*

- Feedback that will allow you to see whether your device has received the ON/OFF/DIM signal.
- Wireless signal reliability — each HomeSettings product has a special feature that virtually guarantees that wireless signals are received.
- Manual override.
- Can be used with toggle-style wall plates (not included)
- Compatible with multiple location ON/OFF control using conventional 3-way or 4-way wiring devices.

(https://web.archive.org/web/20150704023643/http://www.smarthome-products.com/p-460-intermatic-homesettings-ha20c-3-way-in-wall-switch-dimmer.aspx).



(https://web.archive.org/web/20150305030349/https://www.smarthome-products.com/p-459-intermatic-homesettings-ha18c-3-way-in-wall-switch.aspx).



(https://web.archive.org/web/20150305030349/https://www.smarthome-products.com/p-459-intermatic-homesettings-ha18c-3-way-in-wall-switch.aspx).

**ANSWER**: Intermatic denies it has committed acts of infringement within this District or any other district. Pending a claim construction determination by the Court, the question of whether specific limitations are met is premature. Except as expressly admitted, Intermatic denies the allegations in Paragraph 19 of the Complaint.

20.      On information and belief, Defendant performs the step of providing a distributed array of relay units, each relay unit having a satellite radio transceiver and a unique serial number, at least some of the relay units being electrically interfaced to a corresponding portion of the appliances. For example, Defendant provides a distributed array of relay units (e.g., a ZWave

14

device acting as a repeater) each relay unit having a satellite radio transceiver (e.g., a ZWave radio) and a unique serial number (e.g., a NodeID), at least some of the relay units (e.g., hardware within the appliance that allows for it to function as a repeater) being electrically interfaced to a corresponding portion of the appliances (e.g., the hardware related to an appliance's repeater functionality is electrically connect to the functional hardware of an appliance; e.g., in the case of a Z-Wave On/Off switch, the switch will have hardware allowing for it to serve as a repeater such as a Z-Wave radio, that is electronically connected to the switch mechanism itself which provides the appliances core function). (*Supra* ¶19).





(http://zwavepublic.com/sites/default/files/APL13031-2%20-%20Z-Wave%20Networking%20Basics.pdf).



(https://z-wavealliance.org/wp-content/uploads/2015/02/ZAD12837-1.pdf).



(http://zwavepublic.com/sites/default/files/command_class_specs_2017A/SDS13784-4%20Z-

Wave%20Network-Protocol%20Command%20Class%20Specification.pdf).

**ANSWER**: Intermatic denies it has committed acts of infringement within this District or any other district. Pending a claim construction determination by the Court, the question of whether specific limitations are met is premature. Except as expressly admitted, Intermatic denies the allegations in Paragraph 20 of the Complaint.

21.     On information and belief, in at least internal testing and usage, Defendant performs the step of signaling, by a main transmitter from the headend computer (e.g., the MultiWave System Controller serving as a controller) the addresses of at least three relay units, one of the addresses being a destination address, the other addresses including first and second relay addresses (e.g., the address for two Z-Wave devices serving as repeaters and a destination Z-Wave device being controlled), and a control signal for an appliance being interfaced to a destination relay unit (e.g., a Z-Wave light switch) having a serial number tied to the destination address (e.g., the destination device's NodeID will be tied to a destination address used in routing). (Supra ¶¶19-20).

(http://zwavepublic.com/sites/default/files/command_class_specs_2017A/SDS13782-

4%20ZWave%20Management%20Command%20Class%20Specification.pdf;

https://standards.ieee.org/getieee802/download/802.15.4-2011.pdf;

https://www.zwaveproducts.com/learn/ask-an-expert/glossary/mesh-network;

http://docslide.us/documents/Z-Wave-technical-basics-small.html;

http://www.zwaveproducts.com/learn/Z-Wave).

**ANSWER**: Intermatic denies it has committed acts of infringement within this District or any other district. Pending a claim construction determination by the Court, the question of whether specific limitations are met is premature. Except as expressly admitted, Intermatic denies the allegations in Paragraph 21 of the Complaint.

22.     On information and belief, in at least internal testing and usage, Defendant performed the step of decoding the first relay address at a first relay unit having a corresponding serial number. For example, the accused product will decode a first relay address (e.g. the address for a first Z-Wave device used as a repeater) having a corresponding serial number (e.g. NodeID).

(*Supra* ¶¶19-20).



(http://zwavepublic.com/sites/default/files/APL13031-2%20-%20Z-Wave%20Networking%20Basics.pdf).



(http://zwavepublic.com/sites/default/files/APL13031-2%20-%20Z-Wave%20Networking%20Basics.pdf).

**ANSWER**: Intermatic denies it has committed acts of infringement within this District or any other district. Pending a claim construction determination by the Court, the question of whether specific limitations are met is premature. Except as expressly admitted,

Intermatic denies the allegations in Paragraph 22 of the Complaint.

23.     On information and belief, in at least internal testing and usage, Defendant performed the step of transmitting the control signal, the second relay address, and the destination address from the first relay unit. For example, the accused product will transmit the control signal (e.g. a signal to control a Z-Wave device), the second relay address (e.g. the first Z-Wave device serving as a repeater will inform the next repeater of the next device the message should be forwarded to) and the destination address (e.g. the first repeater will inform subsequent repeaters in the chain of the final destination device) from the first relay unit. (*Supra* ¶22).

**ANSWER**: Intermatic denies it has committed acts of infringement within this District or any other district. Pending a claim construction determination by the Court, the question of whether specific limitations are met is premature. Except as expressly admitted, Intermatic denies the allegations in Paragraph 23 of the Complaint.

24.     On information and belief, in at least internal testing and usage, Defendant performed the step of feeding the control signal to the appliance from the destination relay unit. For example, the accused product feeds the control signal to the appliance from the destination relay unit (e.g. Z-Wave hardware within a Z-Wave device will feed the control signal to the hardware within the device that actually performs its core function, such as a light switches components that allow for it to switch a light on and off). (*Supra* ¶22).

**ANSWER**: Intermatic denies it has committed acts of infringement within this District or any other district. Pending a claim construction determination by the Court, the question of whether specific limitations are met is premature. Except as expressly admitted, Intermatic denies the allegations in Paragraph 24 of the Complaint.

25.    On information and belief, in at least internal testing and usage, Defendant performed the steps of (a) transmitting the destination address, and a acknowledgement signal from the destination relay unit; (b) decoding the second relay address at the second relay unit; (c) transmitting the acknowledgement signal, the first relay address, and the destination address from the second relay unit; (d) decoding the destination address and receiving the acknowledgement signal at the headend computer. For example, Z-Wave devices will send an acknowledgement signal from a destination device back to a headend computer or controller. This is accomplished in a manner reverse of the procedure used to send a control signal from the headend computer of controller to the destination device via intermediate devices serving as repeaters. (*Supra* ¶22).



Figure 8 - Maximum distance between two nodes via four repeaters

([https://www.vesternet.com/pages/understanding-z-wave-networks-nodes-devices](https://www.vesternet.com/pages/understanding-z-wave-networks-nodes-devices)).



Figure 2 - communication with and without acknowledgment

The return receipt is called **Acknowledge (ACK)**. A Z-Wave transceiver will try up to three-times to send a message while waiting for an ACK. After three unsuccessful attempts the Z-Wave transceiver will give up and report a failure message to the user. The number of unsuccessful attempts is also a good indicator of the network's wireless connection quality.

([https://www.vesternet.com/pages/understanding-z-wave-networks-nodes-devices](https://www.vesternet.com/pages/understanding-z-wave-networks-nodes-devices)).



Z-Wave enables a variety of monitoring and control applications. The basis for the applications is the networking services provided by the Z-Wave Protocol.

The Z-Wave Protocol can add and remove nodes in a network. This is known as inclusion and exclusion.

**Example 1: Gateway adding a lamp to the network**

A Z-Wave node is identified by its NodeID. All nodes in the network share the same HomeID. The NodeID and HomeID are assigned during inclusion.
Inclusion is managed by a node known as the Primary Controller.

(http://zwavepublic.com/sites/default/files/APL13031-2%20-%20Z-Wave%20Networking%20Basics.pdf).

**ANSWER**: Intermatic denies it has committed acts of infringement within this District or any other district. Pending a claim construction determination by the Court, the question of whether specific limitations are met is premature. Except as expressly admitted, Intermatic denies the allegations in Paragraph 25 of the Complaint.

## IV. COUNT II
## [ALLEGED] PATENT INFRINGEMENT OF U.S. PATENT NO. 6,873,245

26.    Plaintiff incorporates the above paragraphs herein by reference.

**ANSWER**: Intermatic incorporates by reference its answers and responses in Paragraphs 1-25 above as if fully set forth herein.

27.    On March 29, 2005, United States Patent No. 6,873,245 ("the '245 Patent") was duly and legally issued by the United States Patent and Trademark Office. The application leading to the '245 patent was filed on August 14, 2001, and is a continuation-in-part of the application leading to the '166 Patent. (Ex. B at cover). The '245 Patent is titled "RF Remote Appliance Control/Monitoring System." A true and correct copy of the '245 Patent is attached hereto as Exhibit B and incorporated herein by reference.

**ANSWER**: Intermatic admits that the purported copy of U.S. Patent No. 6,873,245 (the "'245 Patent") that is attached to the Complaint as Exhibit B indicates that the application leading to the '245 Patent was filed on August 14, 2001 and purports to be a continuation-in-part of the application leading to the '166 Patent, that the '245 Patent issued on March 29, 2005, and that the '245 Patent is entitled "RF Remote Appliance Control/Monitoring System." Intermatic is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 27 of the Complaint. Except as expressly admitted, Intermatic denies the allegations in Paragraph 27 of the Complaint.

28.     Plaintiff is the assignee of all right, title and interest in the '245 patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '245 Patent. Accordingly, Plaintiff possesses the exclusive right and standing to prosecute the present action for infringement of the '245 Patent by Defendant.

**ANSWER**: Intermatic denies it has committed acts of infringement within this District or any other district. Intermatic is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 28 of the Complaint. Except as expressly admitted, Intermatic denies the allegations in Paragraph 28 of the Complaint.

29.     Because the '245 patent is a continuation in part of the application leading to the '166 patent, the '245 patent has a substantially overlapping specification and the background regarding the '166 patent is equally applicable and is incorporated by reference with respect to the '245 patent. (*Supra* ¶¶11-17).

**ANSWER**: Intermatic is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29 of the Complaint. Except as expressly admitted, Intermatic denies the allegations in Paragraph 29 of the Complaint.

**[Alleged] Direct Infringement**

30.     Upon information and belief, Defendant has been directly infringing at least claim 1 of the '245 patent in Illinois, and elsewhere in the United States, by performing actions comprising making, using, selling, and/or offering for sale an appliance controller for a distributed appliance systems having a multiplicity of appliances, and a plurality of relay units, that satisfies the limitations of at least claim 1, including without limitation the MultiWave System Controller, and Z-Wave Dimmers, temperature sensor receivers and other Zwave supported devices ("Accused Instrumentality").

**ANSWER**: Intermatic denies the allegations in paragraph 30 of the Complaint.

31.     Each Accused Instrumentality provides an appliance controller (e.g., Z-Wave Dimmers, temperature sensor receivers and other Z-wave supported devices) for a distributed appliance system (e.g., Z-Wave network) having a multiplicity of appliances (e.g., appliances such as lights, appliances, etc.), and a plurality of relay units (e.g., repeaters), one of the relay units being the appliance controller (e.g., a Z-Wave Controller). (*Supra* ¶¶19-21; http://zwavepublic .com/sites/default/files/command_class_specs_2017A/SDS13782-4%20ZWave%20Management %20Command%20Class%20Specification.pdf; http://zwavepublic.com/sites/default/files/APL13 031-2%20-%20ZWave%20Networking%20Basics.pdf)

**ANSWER**: Intermatic denies it has committed acts of infringement within this District or any other district. Pending a claim construction determination by the Court, the question of whether specific limitations are met is premature. Except as expressly admitted, Intermatic denies the allegations in Paragraph 31 of the Complaint.

32.     Each Accused Instrumentality has a low power satellite radio transceiver (e.g., radio frequency transceivers within the various Z-Wave devices) having a range being less than a distance to at least some of the appliances. (*Supra* ¶¶19-21).

> **ANSWER**: Intermatic denies it has committed acts of infringement within this District or any other district. Pending a claim construction determination by the Court, the question of whether specific limitations are met is premature. Except as expressly admitted, Intermatic denies the allegations in Paragraph 32 of the Complaint.

33.     Each Accused Instrumentality has an appliance interface for communicating with the at least one local appliance (e.g., an interface which connects and makes possible the transmission of signal to the actual electrical appliance like a light and plugged in appliances). (*Supra* ¶¶19-21).

> **ANSWER**: Intermatic denies it has committed acts of infringement within this District or any other district. Pending a claim construction determination by the Court, the question of whether specific limitations are met is premature. Except as expressly admitted, Intermatic denies the allegations in Paragraph 33 of the Complaint.

34.     Each Accused Instrumentality has a microcomputer (e.g., microcontroller) connected between the satellite radio transceiver (e.g., Z-Wave transceiver) and the appliance interface and having first program instructions for controlling the satellite transceiver (e.g., the microcontroller controls the transmission of signals from the transceiver to the other Z-Wave nodes in the network) and second program instructions for directing communication between the satellite transceiver and the appliance interface (e.g., the microcontroller within the Z-Wave device enables the command received from the appliance interface to be communicated to the local appliance by the Z-Wave transceiver so that the intended action can be executed such as switch on/off a light,

24

control temperature, dim a light). (*Supra* ¶¶19-21; https://ZWavealliance .org/Z-Wave-oems-developers/; http://zwavepublic.com/sites/default/files/command_class_specs _2017A/SDS13782-4%20ZWave%20Management%20Command%20Class%20 Specification.pdf; http://www.rfwirelessworld.com/Tutorials/Z-Wave-physical-layer.html).

**ANSWER**: Intermatic denies it has committed acts of infringement within this District or any other district. Pending a claim construction determination by the Court, the question of whether specific limitations are met is premature. Except as expressly admitted, Intermatic denies the allegations in Paragraph 34 of the Complaint.

35.    Each Accused Instrumentality has a first program instructions including detecting communications directed by another of the relay units (e.g., another Z-Wave node acting as a repeater) relative to the same appliance controller (e.g., targeted Z-Wave node), signaling receipt of the directed communications (sending acknowledgement signal through the Z-Wave transceiver), and directing communications to the other of the relay units relative to the same appliance controller (e.g., sending status of an appliance or signal from a connected sensor). For example, MultiWave System Controller can send/receive messages to program various connected Z-Wave devices; the Z-Wave outlet can receive communications to turn on or off appliances or can communicate regarding the status of the appliance; the Z-Wave switch can receive communications to program connected lighting sources or communicate regarding the status of the light. (*Supra* ¶¶19-21; http://zwavepublic.com/sites/default/files/APL13031-2%20- %20Z- ave%20Networking%20Basics.pdf;http://zwavepublic.com/sites/default/files/command_class_ specs_2017A/SDS13784-4%20ZWave%20Network-protocol%20Command%20Class%20 Specification.pdf).

**ANSWER**: Intermatic denies it has committed acts of infringement within this District or any other district. Pending a claim construction determination by the Court, the question of whether specific limitations are met is premature. Except as expressly admitted, Intermatic denies the allegations in Paragraph 35 of the Complaint.

36.     Each Accused Instrumentality has a second program instructions including detecting relay communications directed between the another of the relay units and a different relay unit, transmitting the relay communications, detecting a reply communication from the different relay unit, and transmitting the reply communication to the other of the relay units, wherein at least some of the relay units communicate with others of the relay units by relay communications using at least two others of the relay units (e.g., a Z-Wave node detects messages from primary controller and checks whether message is intended for itself, if not, then acting as a repeater, transmits it to next intended device in the route. Also, the Z-Wave node detects messages from another Z-Wave node and forwards it to primary controller. N number of nodes may be involved in the process acting as repeaters or relay units). The Accused Instrumentality works on Z-Wave technology which uses mesh network and would communicate with the other relay units by relay communications using at least two others of the relay units (e.g., repeaters). (*Supra* ¶¶19-21;http://zwavepublic.com/sites/default/files/APL13031-2%20-%20Z-Wave%20 Networking%20Basics.pdf; http://zwavepublic.com/sites/default/files/command_class_specs_ 2017A/SDS13784-4%20ZWave%20Network-Protocol%20Command%20Class%20 Specification.pdf; https://www.zwaveproducts.com/learn/ask-an-expert/glossary/mesh-network; http://docslide.us/documents/Z-Wave-technical-basics-small.html; http://www.zwaveproducts .com/learn/Z-Wave).

**ANSWER**: Intermatic denies it has committed acts of infringement within this District or any other district. Pending a claim construction determination by the Court, the question of whether specific limitations are met is premature. Except as expressly admitted, Intermatic denies the allegations in Paragraph 36 of the Complaint.

37.     Plaintiff has been damaged because of Defendant's infringing conduct. Defendant is thus liable to Plaintiff for damages in an amount that adequately compensates Plaintiff for such Defendant's infringement of the '166 Patent and the '245 Patent, i.e., in an amount that by law cannot be less than would constitute a reasonable royalty for the use of the patented technology, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**ANSWER**: Intermatic denies the allegations in Paragraph 37 of the Complaint.

38.     On information and belief, Defendant had at least constructive notice of the '166 Patent and the '245 Patent by operation of law, and there are no marking requirements that have not been complied with.

**ANSWER**: Intermatic admits that it has had knowledge of the '166 Patent and the '245 Patent (collectively, the "Patents-in-Suit") since the time it was served with the Complaint. Intermatic is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 38 of the Complaint. Except as expressly admitted, Intermatic denies the allegations in Paragraph 38 of the Complaint.

## [PLAINTIFF'S] DEMAND FOR JURY TRIAL

Plaintiff's demand for a jury trial does not require a response from Intermatic.

## [PLAINTIFF'S] PRAYER FOR [ALLEGED] RELIEF

To the extent that a response is required to Plaintiff's prayer for relief, Intermatic denies that Plaintiff is entitled to any judgment against Intermatic and/or an order granting relief in any of the forms requested in parts a-e.

To the extent that any allegations of the Complaint have not been previously specifically admitted or denied, Intermatic denies them.

## AFFIRMATIVE DEFENSES

Intermatic's Affirmative Defenses are listed below. Intermatic reserves the right to amend its answer to add additional Affirmative Defenses consistent with the facts discovered in this case.

## FIRST AFFIRMATIVE DEFENSE

Intermatic has not infringed and does not infringe, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any valid, enforceable claim of the Patents-in-Suit.

## SECOND AFFIRMATIVE DEFENSE

Each asserted claim of the Patents-in-Suit is invalid for failure to comply with one or more of the requirements of the United States Code, Title 35, including without limitation, 35 U.S.C. §§ 101, 102, 103, and 112, and the rules, regulations, and laws pertaining thereto.

## THIRD AFFIRMATIVE DEFENSE

To the extent that Plaintiff and any predecessors in interest to the Patents-in-Suit failed to properly mark any of their relevant products or materials as required by 35 U.S.C. § 287, or otherwise give proper notice that Intermatic's actions allegedly infringe the Patents-in-Suit, Intermatic is not liable to Plaintiff for the acts alleged to have been performed before Intermatic received actual notice that it was allegedly infringing the Patent-in-Suit.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails to state a claim upon which relief can be granted at least because the claims of the Patents-in-Suit do not claim patent eligible subject matter under 35 U.S.C. § 101.

## FIFTH AFFIRMATIVE DEFENSE

Karamelion's claims for relief are barred by the doctrines of express or implied license, patent exhaustion, the single recover rule, and/or intervening rights.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims for alleged damages or costs are limited by one or more of 35 U.S.C. §§ 286, 287, 288 and 28 U.S.C. § 1498.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of prosecution history estoppel based on statements, representations, and admissions made during prosecution of the patent application resulting in the '166 and '245 patents.

## EIGHTH AFFIRMATIVE DEFENSE

The Patents-in-Suit are invalid for failure to comply with 35 U.S.C. § 25(b) and/or 37 C.F.R. § 1.68.

## INTERMATIC INCORPORATED'S COUNTERCLAIMS

For its counterclaims against Plaintiff Karamelion LLC ("Karamelion"), Counterclaim Plaintiff Intermatic Incorporated ("Intermatic") alleges as follows:

## PARTIES

1.      Counterclaim Plaintiff Intermatic is a limited liability company organized and existing under the laws of the State of Delaware, with a place of business located in Spring Grove, Illinois.

2.      Upon information and belief based solely on Paragraph 1 of the Complaint as pled by Plaintiff, Counterclaim Defendant Karamelion, is a foreign limited liability company organized and existing under the laws of the State of Texas.

## JURISDICTION

3.      Intermatic incorporates by reference Paragraphs 1-2 above.

4.      These counterclaims arise under the patent laws of the United States, Title 35, United States Code. The jurisdiction of this Court is proper under at least 35 U.S.C. § 271 *et seq.*, and 28 U.S.C. §§ 1331, 1338, 1367, and 2201–02.

5.      Karamelion has consented to the personal jurisdiction of this Court at least by commencing its action for patent infringement in this District, as set forth in its Complaint.

6.      Based solely on the filing of this action, venue is proper, though not necessarily convenient, in this District pursuant at least 28 U.S.C. §§ 1391 and 1400.

## COUNT I
## DECLARATION REGARDING NON-INFRINGEMENT

7.      Intermatic incorporates by reference Paragraphs 1-6 above.

8.      Based on the filing of this action and at least Intermatic's first affirmative defense, an actual controversy has arisen and now exists between the parties as to whether Intermatic infringes U.S. Patent Nos. 6,275,166 (the "'166 Patent") and/or 6,873,245 (the "'245 Patent") (collectively, the "Patents-in-Suit").

9.      Intermatic does not infringe at least claim 16 of the '166 Patent because, *inter alia*, no system employed or process practiced by Intermatic "provid[es] a headend computer having a main radio transceiver," "provid[es] a distributed array of relay units, each relay unit having a satellite radio transceiver and a unique serial number, at least some of the relay units being electrically interfaced to a corresponding portion of the appliances," "signal[s] by the main transmitter from the headend computer the addresses of at least three relay units, one of the addresses being a destination address, the other addresses including first and second relay addresses, and a control signal for an appliance being interfaced to a destination relay unit having a Serial number corresponding to the destination address," "decod[es] the first relay address at a first relay unit having a corresponding serial number," "transmit[s] the control signal, the second relay address, and the destination address from the first relay unit," "decod[es] the destination address at the destination relay unit," and/or "feed[s] the control signal to the appliance from the destination relay unit."

10.     Intermatic does not infringe at least claim 1 of the '245 Patent because no system employed or process practiced by Intermatic has: "a low power satellite radio transceiver having a range being less than a distance to at least some of the appliances," "an appliance interface for communicating with the at least one local appliance," some "relay units [that] communicate with others of the relay units by relay communications using at least two others of the relay units," "a microcomputer connected between the satellite radio transceiver and the appliance interface and having first program instructions for controlling the satellite transceiver and second program instructions for directing communication between the satellite transceiver and the appliance interface," "first program instructions including detecting communications directed by another of the relay units relative to the same appliance controller, signaling receipt of the directed

31

communications, and directing communications to the other of the relay units relative to the same appliance controller," "second program instructions including detecting relay communications directed between the another of the relay units and a different relay unit, transmitting the relay communications, detecting a reply communication from the different relay unit, and transmitting the reply communication to the other of the relay units" and/or "at least some of the relay units communicate with others of the relay units by relay communications using at least two others of the relay units."

11.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., Intermatic requests a declaration by the Court that Intermatic has not infringed and does not infringe any claim of the Patent-in-Suit under any theory (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)).

## COUNT II
## DECLARATION REGARDING INVALIDITY

12.     Intermatic incorporates by reference Paragraphs 1-11 above.

13.     Based on the filing of this action and at least Intermatic's Second Affirmative Defense, an actual controversy has arisen and now exists between the parties as to the validity of the claims of the Patents-in-Suit.

14.     The asserted claims of the Patents-in-Suit are anticipated and/or rendered obvious by, *inter alia*, U.S. Patent No. 5,978,364, U.S. Patent No. 5,892,758, WO97/02677, WO 95/19685, LonWorks, and Lexicon 700T.

15.     At least claim 16 of the '166 Patent is invalid for failure to satisfy the requirements of 35 U.S.C. § 112 because, among other things, the specification as filed does not contain adequate written description and/or enabling disclosure for how the claimed method "feed[s] the control signal to the appliance from the destination unit." Accordingly, the specification fails to

reasonably convey to a person of skill in the art ("POSITA") that the inventor had possession of the subject matter of the alleged invention, and it fails to enable a POSITA to make and use the alleged invention as claimed.

16.     At least claim 1 of the '245 Patent is invalid for failure to satisfy the requirements of 35 U.S.C. § 112 because, among other things, the specification as filed does not contain adequate written description and/or enabling disclosure for how the claimed "second program instructions for directing communication between the satellite transceiver and the appliance interface" (emphasis added) can include, "detecting relay communications directed between the another of the relay units and a different relay unit, transmitting the relay communications, detecting a reply communication from the different relay unit, and transmitting the reply communication to the other of the relay units." Accordingly, the specification fails to reasonably convey to a POSITA that the inventor had possession of the subject matter of the alleged invention, and it fails to enable a POSITA to make and use the alleged invention as claimed.

17.     The asserted claims of the Patents-in-Suit are invalid because they are indefinite under 35 U.S.C. § 112, as they fail to particularly point out and distinctly claim the subject matter which the applicant regards as his invention. For example, the term "the at least one local appliance" is indefinite because it is an ambiguous term of spatial proximity that lacks antecedent basis, and because the specification contains no further guidance on the meaning of the term. The term "at least some of the relay units" is indefinite because it is unclear how many relay units are required to satisfy the claim limitation. The asserted claims are further indefinite because it is unclear to a POSITA how the claimed "second program instructions for directing communication between the satellite transceiver and the appliance interface" (emphasis added) can include, for claim 1 of the '245 patent, "detecting relay communications directed between the another of the

relay units and a different relay unit, transmitting the relay communications, detecting a reply communication from the different relay unit, and transmitting the reply communication to the other of the relay units."

18. At least claim 1 of the '245 Patent is indefinite for mixing apparatus and method limitations.

19. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Intermatic requests a declaration by the Court that the claims of the Patents-in-Suit are invalid for failure to comply with one or more of the requirements of United States Code, Title 35, including without limitation, 35 U.S.C. §§ 101, 102, 103, and 112, and the rules, regulations, and laws pertaining thereto.

## **PRAYER FOR RELIEF**

WHEREFORE, Intermatic asks this Court to enter judgment in Intermatic's favor and against Karamelion by granting the following relief:

a) a declaration that the Patents-in-Suit are invalid;

b) a declaration that Intermatic does not infringe, under any theory, any valid claim of the Patents-in-Suit that may be enforceable;

c) a declaration that Karamelion take nothing by its Complaint;

d) judgment against Karamelion and in favor of Intermatic;

e) dismissal of the Complaint with prejudice;

f) a finding that this case is an exceptional case under 35 U.S.C. § 285 and an award to Intermatic of its costs and attorneys' fees incurred in this action; and

g) further relief as the Court may deem just and proper.

## JURY DEMAND

Intermatic hereby demands trial by jury on all issues.

Dated: June 8, 2020                        Respectfully submitted,

By: */s/ Neil J. McNabnay*
    Neil J. McNabnay
    mcnabnay@fr.com
    Texas Bar No. 24002583
    Ricardo J. Bonilla (pro hac to be filed)
    bonilla@fr.com
    Texas Bar No. 24082704

    **FISH & RICHARDSON P.C.**
    1717 Main Street, Suite 5000
    Dallas, Texas 75201
    (214) 747-5070 – Telephone
    (214) 747-2091 – Facsimile

    Mark H. Remus
    **BRINKS GILSON & LIONE**
    455 N. Cityfront Plaza Drive, Suite 3600
    Chicago, IL  60611
    (312) 321-4200
    mremus@brinksgilson.com

    **COUNSEL FOR INTERMATIC INCORPORATED**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on June 8, 2020, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5.5(b).

*/s/ Neil J. McNabnay*
Neil J. McNabnay