# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

KARAMELION LLC,

     Plaintiff,

v.

INTERMATIC INC.,

     Defendant.

Case No. 1:20-cv-00639

PATENT CASE

**JURY TRIAL DEMANDED**

## DEFENDANT INTERMATIC INCORPORATED'S REPLY BRIEF IN SUPPORT OF ITS RULE 12(b)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Neil J. McNabnay
Ricardo J. Bonilla
Noel F. Chakkalakal
1717 Main Street, Suite 5000
Dallas, Texas 78061
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
mcnabnay@fr.com;
rbonilla@fr.com;
chakkalakal@fr.com

Mark H. Remus
BRINKS GILSON & LIONE
455 N. Cityfront Plaza Drive, Suite 3600
Chicago, IL 60611
mremus@brinksgilson.com

ATTORNEYS FOR DEFENDANT
INTERMATIC INC.

# TABLE OF CONTENTS

JURY TRIAL DEMANDED ........................................................................................... 1

I.      INTRODUCTION ................................................................................................ 1

II.      ARGUMENT ......................................................................................................... 2

B.      The Asserted Patents Fail *Alice* Step 2 Because Adding Generic Repeater Functionality To An Existing Appliance Controller Is Not "Inventive." ........................................ 6

C.      All of the Claims of the Asserted Patents Are Ineligible. ......................................... 9

D.      Any Purported Novelty Is Irrelevant. ..................................................................... 10

III.      CONCLUSION .................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Tex., LLC v. DIRECTV, LLC,*
    838 F.3d 1253 (Fed. Cir. 2016)................................................................8

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
    134 S. Ct. 2347 (2014)................................................................7, 8

*Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC,*
    827 F.3d 1341 (Fed. Cir. 2016)................................................................8

*Berkheimer v. HP Inc.,*
    881 F.3d 1360 (Fed. Cir. 2018) ................................................................7, 8, 9, 10

*BSG Tech LLC v. Buyseasons, Inc.,*
    899 F.3d 1281 (Fed. Cir. 2018)................................................................1, 2, 7

*ChargePoint, Inc. v. SemaConnect, Inc.,*
    920 F.3d 759 (Fed. Cir. 2019)................................................................3, 7, 8, 9

*Content Extraction and Transmission LLC v. Wells Fargo Bank,*
    776 F.3d 1343 (Fed. Cir. 2014)................................................................9

*Elec. Power Grp., LLC v. Alstom S.A.,*
    830 F.3d 1350 (Fed. Cir. 2016)................................................................3

*Epic IP LLC v. Backblaze, Inc.,*
    351 F. Supp. 3d 733 (D. Del. 2018)................................................................6

*Intellectual Ventures I LLC v. Symantec Corp.,*
    838 F.3d 1307 (Fed. Cir. 2016)................................................................10

*Internet Patents Corp. v. Active Network, Inc.,*
    790 F.3d 1343 (Fed. Cir. 2015)................................................................4

*Synopsys, Inc. v. Mentor Graphics Corp.,*
    839 F.3d 1138 (Fed. Cir. 2016)................................................................3, 10

*In re TLI, Commc'ns LLC Patent Litig.,*
    823 F.3d 607 (Fed. Cir. 2016)................................................................3, 7

*Uniloc USA, Inc. v. ADP, LLC,*
    -772 F. App'x 890, 2019 WL 2245938 (Fed. Cir. May 24, 2019)................................................................5, 10

*Voxathon LLC v. Alpine Elecs. of Am., Inc.,*
    No. 2:15-cv-562-JRG, 2016 WL 260350 (E.D. Tex. Jan. 21, 2016) ................................................................6

**Statutes**

35 U.S.C. § 101 ...................................................................................................................1, 3, 9, 10

**Other Authorities**

Rule 12(b)(6) ..........................................................................................................................9

## I.        INTRODUCTION

Karamelion's decision to assert Claim 16 of the '166 Patent in this case, forced it to effectively concede that the claims of the Asserted Patents are ineligible under 35 U.S.C. § 101:

- Karamelion's response (unintentionally) admits the claims are ***directed to*** the abstract idea of routing messages ("relay functionality").

- Karamelion's response shows that the claims recite generic hardware to perform the claim limitations.

The Asserted Patents are patent-ineligible because they fail both prongs of the *Alice* test. Both Claim 16 of the '166 Patent, and Claim 1 of the '245 Patent, are directed to the same abstract idea of routing messages through an intermediary and are devoid of any "inventive concept."

Karamelion's response explicitly answers, in favor of Intermatic, the question that prevented the Honorable Judge Covington from finding the '166 Patent and the '245 Patent invalid, namely, what exactly are the claims directed to. For clarification, Karamelion ***incorrectly*** states that the court ***held*** the claims were not directed to an abstract idea. In contrast, Judge Covington stated "it's true that the patents ***involve*** the abstract idea of routing messages through intermediaries*.*" (emphasis added). However, the court could not determine whether the claims were "***directed to***" said abstract idea. Ex. A at 43. Here, Karamelion ***admits*** that the claims are in fact directed to the abstract idea of routing messages through intermediaries (relay functionality).

The recited components of Claim 1 of the '245 Patent and Claim 16 of the '166 Patent recite radio transceivers, a computer or microcomputer, and "program instructions" or "signaling." However, these components, whether considered individually or in combination, do not amount to any ***technical improvement*** in the functioning of the system or any components. Rather, these components are used only as tools to limit the abstract idea of routing a message through an intermediary to the context of a distributed appliance system. "As a matter of law, narrowing or reformulating an abstract idea does not add 'significantly more' to it." *BSG Tech LLC v.*

*Buyseasons, Inc.*, 899 F.3d 1281, 1290-91 (Fed. Cir. 2018) ("If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea.") There are no allegations in Karamelion's Complaint regarding any "unconventional" features of the claims, and absent any such unconventionality, Karamelion's claims are invalid.

## II.    ARGUMENT

### A.    Karamelion's Assertion Shows the Claims are Directed to Routing Messages.

Karamelion argues that the claims are not directed to the abstract idea of "routing a message" but rather "are directed to *an improved appliance controller* with specific relay functionality" (emphasis added). *Id.* D.I. 26 at 8. Claim 16 of the '166 Patent, however, *does not even recite* an appliance controller. Among the components recited in Claim 16 are "relay unit(s)" and a "headend computer." Since the claim does not even recite an "appliance controller," let alone an improved one, the appliance controller ***cannot*** be what Claim 16 is directed to. Karamelion is in fact admitting that Claim 16 of the '166 Patent is directed towards the abstract idea of routing messages. Looking again at Karamelion's assertion regarding claim focus, Karamelion states the claims "are directed to an improved appliance controller with specific *relay functionality*." Since, as explained above, Claim 16 of the '166 Patent does not even recite an appliance controller, what's left of Karamelion's assertion is an admission of what the claim is truly directed to. And what is left is the abstract concept of relay functionality, or routing messages.

Since Karamelion repeatedly treats both Claim 1 of the '245 Patent, and Claim 16 of the '166 Patent as the same, insofar as the inventive concept, Claim 1 of the '245 Patent is similarly directed the abstract idea of routing messages. The use of the term relay unit in Claim 16 of the '166 Patent vs. appliance controller in Claim 1 of the '245 Patent is consequential, in that it demonstrates that *neither* the relay unit nor the appliance controller discloses anything novel, and

2

*neither* one is the focus of the claims. Each is no more than a generic component performing generic functions. The relay units do nothing more than what their name implies, i.e. relay messages. Furthermore, the headend computer is described as a generic "personal computer," the '166 Patent, 4:15-24, that includes a "low power main radio transceiver," *id.*, 10:24- 27, which can be "one of a plurality of [] devices," including a generic "RF modem," *id.*, 4:25-34.

Nothing in the claim language is concerned with improving the functioning of the radio transceivers, the appliance interface, the computer, the microcomputer from a ***technical*** standpoint, which is why the claimed components are interchangeable and described "in vague terms without any meaningful limitations." *In re TLI, Commc'ns LLC Patent Litig.*, 823 F.3d 607, 612-13 (Fed. Cir. 2016) (concluding that "the focus of the patentee and of the claims was not on" improved hardware because the specification described the functionality of the hardware "in vague terms without any meaningful limitations"). Instead, the claims' focus is on the ***idea*** of adding a conventional short-range transceiver and generic processing to an already existing appliance controller so that it could also function as an intermediary to perform the abstract idea of routing messages. Any alleged cost savings or functional improvements arise out of the conventional advantages of using a generic short-range transceiver as a tool, not a particular technical improvement in the components or processing. *See Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016) (distinguishing patent eligible improvements in computer functionality from patent ineligible improvements that use computers as tools).

Karamelion retreats to the specification to provide "extensive details of how to implement the claimed invention." D.I. 26 at 8-9. However, "[t]he § 101 inquiry must focus on the language of the Asserted Claims themselves," *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016), "and the specification cannot be used to import details from the specification if those details are not claimed." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed.

Cir. 2019) ("Even a specification full of technical details about a physical invention may nonetheless conclude with claims that claim nothing more than the broad law or abstract idea underlying the claims, thus preempting all use of that law or idea."). Here, the claims disclose the use of generic components to perform the abstract idea of relay functionality or routing messages. Moreover, nothing in the specification suggests that the applicants purported to invent a new arrangement of components in a distributed appliance system or intended to improve from a technical standpoint the basic functionality of an appliance controller, a low-power satellite radio transceiver, an appliance interface, or a microcomputer. *Id.* at 772–73 (noting that "the specification does not suggest that the inventors' discovery was the particular arrangement of components claimed," and "there is no indication that the invention of the '570 patent was intended to improve those particular components or that the inventors viewed the combination of those components as their invention").

Like in *ChargePoint*, the applicants of the Asserted Patents failed to claim any details of how to implement their short-range wireless distributed appliance system and instead describe the system only at a high level of generality. For example, the appliance controller's microcomputer has "first program instructions" for detecting communications directed to its own appliance controller and signaling receipt to the headend computer, '245 Patent, 2:6-10, and "second program instructions" for recognizing that the message is intended for another appliance and forwarding the message along, *id.*, 1:10-18. Nothing in Claim 1 of the '245 or Claim 16 of the '166 Patent (or any other claim) explains how the microcomputer or computer must be specially programmed to detect whether the message is intended for its own appliance, to return a signaling receipt to the headend computer, or to forward a message to another appliance. Rather, the broad claim language covers only the resulting system the applicants envisioned, but not how to achieve it. *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015) (concluding that claim

4

was ineligible where "[t]he mechanism for maintaining the state is not described, although this is stated to be the essential innovation"). Notably, Karamelion attempts to distinguish Claim 16 of the '166 Patent by stating that it "requires different programming." However, nowhere does the specification describe how such programming would be different than the "instructions" found in Claim 1 of the '245 Patent.

Karamelion's reliance on the non-precedential opinion in *Uniloc USA, Inc. v. ADP, LLC*, - 772 F. App'x 890, 2019 WL 2245938 (Fed. Cir. May 24, 2019) is also misplaced. The claims at issue in that case were not directed to an abstract idea as the claims are here, but rather to an "improvement over then-existing methods for centralized distribution of software" by allowing applications to be installed on client computers "from a single point for an entire managed network environment." *Id*. at *4-5. The claims were not abstract because they included specific limitations to achieve the patent's stated goal. *Id.* at *5. Those limitations amounted to a particular improvement of initiating on-demand centralized registration of a software application. *Id*. And the *Uniloc* court also found some patents directed to ineligible subject matter—the claims here are analogous to the ineligible claims.

For example, the claim language itself confirms that Claim 1 of the '245 patent is directed to the abstract idea of routing messages through an intermediary. The claim recites generic hardware like "a low power satellite radio transceiver," "an "appliance interface," and "a microcomputer," and uses generic, functional language like "communicating with," "controlling," "directing communications," "detecting," and "transmitting" to describe their operation. Similar to the ineligible *Uniloc* claims, nothing in the Claim 1 either explains how these functions are accomplished in concrete, technical terms or purports to provide any technological improvement to the claimed components. Rather, the claims describe these functions only in unpatentable result-based language and use the generic components for their intended and expected purpose. *See Two-*

*Way Media*, 874 F.3d at 1337 (holding claims abstract that used result-based functional language like "converting," "routing," "controlling," "monitoring," and "accumulating records," but failed to "sufficiently describe how to achieve these results in a non-abstract way"). As Judge Bryson, sitting by designation in the District of Delaware, recently noted, claims that "recite the concept, but not the way to implement it," are ineligible for patenting. *Epic IP LLC v. Backblaze, Inc.*, 351 F. Supp. 3d 733, 740 (D. Del. 2018).

**B.      The Asserted Patents Fail *Alice* Step 2 Because Adding Generic Repeater Functionality To An Existing Appliance Controller Is Not "Inventive."**

According to Karamelion, Intermatic "provides no factual citations to support its contentions that the low power satellite radio transceiver, appliance interface, and microcomputer are conventional and generic hardware, or that the programming instructions are not 'special programming.'" D.I. 26 at 16. Not so. Intermatic provided a detailed analysis of each of these components and processing in its opening brief. *See* D.I. 18 at 13-18. Moreover, the specification confirms that these components and processing were conventional. For example, the specification explains that the "low power satellite radio transceiver" was both inexpensive and effective: "low power transceivers are inexpensive to provide, and are effective with transmission paths that must 'bend' around objects that would normally block a line-of-site RF broadcast." '166 Patent, 8:27-30. In contrast, Plaintiff has not pointed to anything in either the patents or the Complaint to show that this (or any other) component was unconventional and, more importantly, has not shown how any purportedly unconventional feature would amount to an inventive concept as a matter of law. *See, e.g.*, *Voxathon LLC v. Alpine Elecs. of Am., Inc.*, No. 2:15-cv-562-JRG, 2016 WL 260350 at *4 (E.D. Tex. Jan. 21, 2016) ("Since the proving of a negative is historically disfavored, once Defendants make a *prima facie* showing that an inventive concept is absent, it falls upon Voxathon to show that there is, in fact, an inventive concept actually present.").

Additionally, Karamelion admits that appliance controllers with generic repeater functionality was in prior art systems (D.I. 26 at 7. Notably, this feature *is absent* from Claim 16 of the '166 Patent (since the claim does not comprise an "appliance controller"). Furthermore, this simply restates the abstract idea of routing a message through an intermediary in the context of a distributed appliance system and thus does not amount to an inventive concept. *See ChargePoint*, 920 F.3d at 774 ("ChargePoint points to the ability to operate charging stations remotely as solving a problem in the field [,but t]his, again, merely mirrors the abstract idea itself and thus cannot supply an inventive concept.").

This is especially true given that no special programming or improved component is claimed. All that is needed to add the generic repeater functionality to an appliance controller is a "microprocessor" having generic "program instructions" that are described in result-based functional terms to cover the following generic processing: if a received message is intended for its own appliance, the appliance controller acknowledges it with a reply; otherwise the appliance controller passes the message along to its intended recipients. Using a generic "microcomputer" to receive, process, and send data are the most basic functions of a computer. *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2359 (2014). Moreover, the claims are altogether devoid of any technical explanation as to how to implement the purported invention. *See In re TLI*, 823 F.3d at 615 (claims failed *Alice's* step 2 where specification limited its discussion of "additional functionality" of conventional components "to abstract functional descriptions devoid of technical explanation as to how to implement the invention").

"At *Alice* step two, it is [thus] irrelevant whether [adding repeater functionality to a conventional appliance controller] may have been non-routine or unconventional as a factual matter." *BSG Tech*, 899 F.3d at 1290–91 ("As a matter of law, narrowing or reformulating an abstract idea does not add 'significantly more' to it."); *see also Berkheimer v. HP Inc., 881 F.3d*

1360, 1370 (Fed. Cir. 2018) (holding claims lacked an inventive concept because they "amount to no more than performing the abstract idea of parsing and comparing data with conventional computer components"); *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016) (holding a claim lacked an inventive concept because it "simply recites the use of generic features . . . as well as routine functions . . . to implement the underlying idea"). Adding generic functioning to an existing appliance controller does not amount to an inventive concept as a matter of law. *See Alice*, at 2359-60.

The claims fare no better when the limitations are viewed in combination. The applicants did not describe how relocating generic repeater functionality from a stand-alone device to a conventional appliance controller "is a ***technical*** improvement over prior art." *See Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (emphasis added). The applicants sought only to reduce costs and avoid regulations associated with existing centralized wireless control systems. '166 Patent, 1:28-32. As the specification confirms, relocating repeater functionality from one device to another merely acts to avoid the "prohibitively expensive" costs associated with existing systems and does not amount to an "inventive concept." *See ChargePoint*, 920 F.3d 759, 774-75 (rejecting plaintiff's reliance on *Bascom* because the claims "do not improve the technology" but instead "merely add generic networking capabilities to [the claimed components] and say 'apply it'"). Considering the limitations in combination "add[s] nothing . . . that is not already present when the [limitations] are considered separately." *Alice*, 134 S.Ct. at 2359 (internal brackets and quotation marks omitted).

For at least these reasons, Karamelion's reliance on *Berkheimer* lacks merit. D.I. 26 at 14. Unlike *Berkheimer*, Karamelion has failed to identify anything in the claims or the specification that describes the claimed components or processing in any inventive manner, and there are no such allegations in its Complaint. *See Berkheimer*, 881 F.3d at 1369. As discussed below,

Karamelion's argument concerning the purported "novelty" of relocating generic repeater functionality to a conventional appliance controller is insufficient to preclude a determination on a Rule 12(b)(6) motion and irrelevant to the § 101 inquiry. Karamelion's claims are directed to patent-ineligible subject matter as a matter of law, and no amount of fact discovery can change that. *See ChargePoint*, 920 F.3d at 775 (concluding that claims failed step 2 because "the only possible inventive concept in the eight asserted claims is the abstract idea itself").

### C.    All of the Claims of the Asserted Patents Are Ineligible.

Claim 1 of the '245 and Claim 16 of the '166 Patent are representative of all the claims of both patents because they are all "substantially similar and linked to the same abstract idea." *See Content Extraction and Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (holding that district court's analysis of representative claims was appropriate where claims were "substantially similar and linked to the same abstract idea"). Karamelion has not presented any meaningful argument to show any distinctive significance of the limitations found in the other claims. *Berkheimer*, 881 F.3d at 1365 ("Courts may treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative.").

Intermatic undertook a separate analysis of all the claims in its opening brief. D.I. 17 at 18-20. As shown therein, the independent claims cannot be meaningfully distinguished from Claim 16 of the '166 Patent or Claim 1 of the '245, and are thus ineligible for the same reasons. *See id*. The dependent claims recite only token or insignificant pre- or post-solution activity, such as specifying the effective range or carrier frequency of the transceivers, and/or use the same or similar high-level functional language, like "transmitting" and "decoding," as used in Claim 16 of the '166 Patent or Claim 1 of the '245 patent. *Id*. at 20. All the claims are thus ineligible for the

same reasons. Karamelion's contentions otherwise lack merit. For example, while Karamelion contends that the "headend computer" limitation recited in Claim 7 of the '166 Patent is a distinctive feature, D.I. 26 at 19, the headend computer is described as a generic "personal computer," '166 Patent, 4:15-24, that includes a "low power main radio transceiver," *id*., 10:24-27, which can be "one of a plurality of [] devices," including a generic "RF modem," *id*., 4:25-34. Neither this nor any other feature is a "distinctive significance of any claim limitations not found in" representative Claim 1 of the '166 Patent. *Berkheimer*, 881 F.3d at 1365.

### D. Any Purported Novelty Is Irrelevant.

Karamelion argues that the claims pass *Alice* step 2 because they were allowed over prior art. Its entire opposition brief rests on this faulty notion. *See generally* D.I. 26 at 1-20. Any purported novelty is irrelevant to the § 101 analysis. *See, e.g., Ariosa*, 788 F.3d at 1379-80; *see also Synopsys*, 839 F.3d at 1151 ("The search for a § 101 inventive concept is . . . distinct from demonstrating § 102 novelty."); *Intellectual Ventures I LLC v. Symantec Corp*., 838 F.3d 1307, 1315 (Fed. Cir. 2016) ("While the claims may not have been anticipated or obvious [from] the prior art . . . that does not suggest that the idea . . . is not abstract, much less that its implementation is not routine and conventional"). Additionally, "mere allowance of claims during prosecution does not preclude dismissal for patent ineligibility." *Uniloc*, 2019 WL 2245938 at *18; *see also id.* ("Uniloc is incorrect that an improvement in efficiency guarantees patent eligibility.").

## III. CONCLUSION

Intermatic respectfully requests that the Court grant its Motion and dismiss with prejudice Karamelion's Complaint for failure to state a claim upon which relief can be granted.

Dated: July 20, 2020

FISH & RICHARDSON P.C.

By: */s/ Noel Chakkalakal*

Neil J. McNabnay
Ricardo J. Bonilla
Noel F. Chakkalakal
1717 Main Street, Suite 5000
Dallas, Texas 78061
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
mcnabnay@fr.com;
rbonilla@fr.com;
chakkalakal@fr.com

Mark H. Remus
BRINKS GILSON & LIONE
455 N. Cityfront Plaza Drive, Suite 3600
Chicago, IL 60611
mremus@brinksgilson.com

ATTORNEYS FOR DEFENDANT
INTERMATIC INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document

has been served on July 20, 2020 to all counsel of record via electronic service.

Respectfully submitted,

By: */s/ Noel F. Chakkalakal*
Noel F. Chakkalakal

11